## Case No. 5,351.

### GEORGIA v. ATLANTIC & G. R. CO.

[3 Woods, 434.] [1]

Circuit Court, S. D. Georgia. April Term, 1879.

TAXATION—LIEN—EXECUTION — AFFIDAVIT OF ILLEGALITY TO STAY—JURISDICTION—EQUITY—RECEIVERS—TITLE TO PROPERTY.

1. The lien of the state for taxes upon the property of a railroad company, rightfully in the custody of the law, is prior to all other liens whatsoever, except the lien of judicial costs.

2. Section 3669 of the Code of Georgia provides that when an execution has been levied on property, and an affidavit of illegality filed to stay proceedings thereon, the property so levied on shall be subject to 'levy and sale under other executions. *Held,* that under this section, such property was subject to execution from the federal as well as the state courts.

3. The courts of the United States, within a state, have equal and concurrent power with the courts of the state, to render judgments and carry them into execution.

4. The equity of section 3669, Code Ga., applies to the taking into possession of property by a receiver, under the order of the court, as well as to a levy under execution.

5. The receiver holds the property as a sheriff would, subject to the prior lien which is being contested.

6. Where a levy on railroad property is suspended by an affidavit of illegality and bond, under the Code of Georgia, the federal court does not exceed its jurisdiction in taking possession of the same property by its receiver.

[Cited in Ex parte Chamberlain. 55 Fed. 707; Ex parte Tyler, 149 U. S. 164, 13 Sup. Ct. 792.]

7. In Georgia a writ of fieri facias for taxes is subject to the same rules as to its mode of execution as writs issued on judgments in favor of private parties.

8. A railroad cannot be cut up into parcels and sold piecemeal on execution.

This was an application made by counsel on behalf of the state of Georgia for leave to sell the depots, freight-houses, passenger-houses and offices of the railroad company, by virtue of a writ of fieri facias, which had

1 [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

been levied on said property to enforce the collection of taxes due the state. The levy had been suspended by an affidavit of illegality filed by the railroad company.

R. N. Ely, Atty. Gen. of Georgia, and Robert Toombs, for the State, cited Hagan v. Lucas, 10 Pet. [35 U. S.] 400; Wiswell v. Sampson, 14 How. [55 U. S.] 52; Hall v. Boyd, 52 Ga. 456; City of Atlanta v. Grant, 57 Ga. 340.

W. S. Chisholm and Robert Falligant, contra, who contended that: (1) As soon as an affidavit of illegality was filed to the tax execution, the property on which those executions had been levied, immediately became subject as the property of the defendant, under section 3669 of the Code of Georgia, to the process of other courts. (2) The execution was levied on a small part of the defendant company's property, to wit, its depots, grounds, etc. No sale could be made under such a levy. Equity would enjoin such a sale, and as this court is now doing, take jurisdiction of the matter, and direct a sale of the entire property of the defendant company for the benefit of all concerned. Macon & W. R. Co. v. Parker, 9 Ga. 377; City of Atlanta v. Grant, 57 Ga. 340.

BRADLEY, Circuit Justice. In relation to the application made on behalf of the state for the collection of its taxes against the railroad company, we may remark, in limine, that the lien of the state for its taxes is undoubtedly prior to all other liens whatsoever, except judicial costs, which are first to be paid where the property is rightfully in the custody of the law.

We are of opinion, however, that the suspension of the tax executions by the contestation thereof, under an affidavit of illegality, left the property levied on open to be proceeded against by subsequent executions or other judicial process. This, we think, follows from a fair construction of section 3669 of the Code. This section declares as follows: "When an execution has been levied on property, and an affidavit of illegality filed to stay proceedings thereon, the property so levied on shall be subject to levy and sale under other execution, and the officer making the first levy shall claim, receive. hold and retain such amount of the proceeds of the sale as the court shall deem sufficient to pay the execution first levied, including interest up to the term of the court at which said illegality shall be determined; and any bond given by the defendant, on filing such affidavit, shall be released and discharged, so far as relates to the property sold."

We have no doubt that this release of the property in favor of a subsequent execution inures to the benefit of executions issued by the circuit court of the United States, sitting in Georgia, as well as to those issued by a state court. The circuit court is not a for-

eign court, though established by another jurisdiction. It is one of the courts which, under our complex form of government, is rightfully established for the administration of justice in the state of Georgia. The people of Georgia, and litigants therein, have state courts to resort to, and, in special cases, United States courts as well. They are their own courts in both cases—in the one case their own as citizens of the state; in the other case their own as citizens of the United States. The peculiar circumstances which give jurisdiction to the latter courts do not affect their entire equality and concurrence of power to render judgments or to carry them into execution. In this regard they have the same power and rights which the state courts have. The forms and modes of procedure used in the United States courts are precisely the same, in all cases at law, as those used in the state courts, and the proceedings in equity are not substantially different, though different in form.

We think, also, that the equity of the statute applies to a taking possession by a receiver under an order of court, as well as a levy under execution. The appointment of a receiver, in such a case as the present, is for the purpose of preserving the property, preparatory to a sale of it. The receiver holds it, as a sheriff would, subject to the prior lien of the execution which is being contested. That lien is not disturbed. The court will take care not only that it shall be respected, but will see that no injustice shall be done to the execution creditor by any unreasonable delay in satisfying his claim, either by a sale of the property, or in some other mode. Perhaps, if the property levied on could possibly be sold separately, so as not to injure other parties interested therein, it would order that the execution might be carried into effect by a sale of the property under the same; but if that would be destructive of the whole property as an entirety, it would require the same to be sold in a manner more conducive to the rights of all concerned, but still, according to the execution creditor, the effect of his prior lien. In our judgment, therefore, this court did not exceed its jurisdiction in taking possession of the property through its receiver at a time when the levy under the execution was suspended.

But there is a difficulty in this case attending the tax levy made by the sheriff, which, if not obviated by some decision or course of decisions, of the supreme court of Georgia, seems to us to render that levy ineffectual and void. [See 98 U. S. 359.] A fi. fa. for taxes is subject to the same rules as to the mode of its execution as other writs of fi. fa. are, which are issued on judgments in favor of private parties, and it seems to us that a portion of a railroad cannot be levied on and sold by virtue thereof.

A railroad is a public highway, and a highway of a most peculiar kind. It is not land, nor like land, in the ordinary sense. For, though in form, the railroad company may own the fee, or some other legal estate in the strip of land on which the road is constructed, yet the company owns it and holds it under a franchise for a particular purpose, namely, that of a roadway for the operation of a railroad under and by virtue of the franchises which have been conferred upon it, and for the purposes of travel and transportation thereon by the public. It is an artery of commerce; it is the means of communication between one part of the country and another. The interest which the public has in it is greater and more important than the interest which the company has in it. It cannot be supposed that the legislature, in authorizing its construction, and granting peculiar franchises for its operation and use, ever intended that execution creditors might levy upon parcels of it, and cut it up into sections, and destroy it as a great public thoroughfare. Such a supposition seems to us preposterous. Suppose a mile of the road should be levied on and sold, would the purchaser have a right to fence it in and take up the rails and cross-ties, and plant it, and thereby destroy the railroad? Could this be done without contemning the power of the state by which it was created and made a public highway?

We think not. There are other ways and means known to the law, or, at least, to equity, if not to the common law, by which creditors may compel the payment of their debts out of the property of the company—seizure of disconnected property belonging to the company, sequestration of earnings, or, if necessary, the sale of the entire road and its franchises. In one of these ways the rights of creditors can be protected, and the public would not be deprived of the means of communication which the erection and establishment of the line has created between different portions of the state, and between this state and other states of the Union. To sell it in parcels would be to sever an artery of commerce. It would affect the whole state in a vital part. Its public means of intercommunication are essential to the prosperity of the people. They are the most efficient appliances of modern civilization.

We cannot believe that the supreme court of Georgia, when the question is fairly presented to it, will ever sanction such a proceeding. That court, in the case of Macon & W. R. Co. v. Parker, 9 Ga. 377, struck the keynote of the matter when it declared as follows, through Judge Lumpkin: "The facts of the case under consideration were novel and peculiar. Here was a road extending through six counties, and one hundred miles in length. What disastrous consequences would have resulted, if each judgment creditor had been allowed to seize and sell separate portions of the road, at different sales, in six different counties through which it passed, and to different purchasers. Would

not this valuable property have been utterly sacrificed; the rights and interests of creditors, as well as the objects and intention of the legislature in granting this charter, entirely defeated? I feel warranted in saying that the whole history of equity jurisprudence does not present a case which made the interference of its powers not only highly expedient, but so indispensably necessary in adjusting the rights of creditors to an insolvent's estate, as this did." The chancellor, then, in taking this matter in hand and directing a sale of the entire interest for the benefit of all concerned, was but invoking the powers of equity to aid the defects of the law; and so far from transcending his authority, he is entitled to the thanks of the parties and the country, for the correct and enlightened policy which he adopted.

The courts of law have now become so constituted, that every court may exercise equity powers, and no resort need be had to a separate court of equity to mould and frame the process and proceedings in such manner as to prevent injustice and wrong. The Code has authorized the superior courts to frame their judgments and executions in accordance with equity, and in the recent case of Atlanta v. Grant, 57 Ga. 340, the following decision has been made:

1. "A chartered railroad, with all rights and privileges that properly appertain to it as an instrument of transportation (excluding, of course, the franchise of the corporation to be a body politic), is property, subject to be applied to the payment of its just debts, and the whole may be sold for that purpose, in this state, under a judgment at law.

2. "But the judgment, and the execution founded thereon, must be specially moulded in substantial compliance with sections 3082, 3562, 3639 of the Code; if not in all cases, certainly in a case where the railroad, in pursuance of the charter, has been located and partially constructed in three counties.

3. "A sale under an execution not thus moulded, about to be made by the sheriff, may be arrested by an affidavit of illegality interposed by the corporation through its proper officers.

4. "Such a sale, though consummated without legal resistance, would be void, and consequently the rights of other creditors, or of the stockholders, would not be lost."

Whether the executions in the present case have been moulded in such form as law and equity require, it is not proper for us to say. They command the sheriff generally, that of the goods and chattels, lands, tenements and franchises of the Atlantic & Gulf Railroad Company, they cause to be levied the amount of the taxes in question. This form may be sufficient to enable the sheriff to proceed according to law, but not contrary to law. Various goods, chattels and lands of the company might, perhaps, have been found on which a lawful levy might have been made. Perhaps the terms of the execution would have authorized the sheriff to levy on the road and franchises of the company as an entirety. But he has done none of these things. He has levied on a part, and a vital part of the road, without which its business cannot be carried on; namely, the depots and the freight-houses, and passenger houses and office. He has levied on the head, without which the railroad must become a lifeless trunk. We are clearly of opinion that this levy was void. Whether the railroad company has acquiesced, or has but faintly opposed this unlawful proceeding, we do not know. The bondholders and creditors who are represented in this cause, were not parties to the proceedings had in the supreme court, and are not bound thereby.

Under these circumstances, we have no hesitation in saying that this court had power, at least during the suspension of the illegal levy, to take possession of the property by means of its receiver. But the lien of the state for taxes does not depend on any execution or levy. It is declared by the Code, and is an independent lien, and this court will take care that the full right of the state shall be preserved so far as it shall be judicially brought to our notice. The application for leave to proceed with the execution is denied.