Jenkins, District Judge.
The complainants sold and delivered to the defendant, for the stipulated price of $22,483.41, certain iron pipe, to be used, and which was used, in the construction of a waterworks plant, designed to supply the city of Oconto and its inhabitants with water. The pipe was laid under the surface of various streets in the city, and connected with hydrants located upon the streets, and also with the pumping works, the latter being in turn connected with a well. This ‘well and these pumping works are situated upon certain premises in the city of Oconto. No part of the material furnished by the complainant was laid upon the premises, with the possible exception that one length of pipe was placed within the limits of Chicago street, extended, abutting the premises in question, and formed part of the connection of the water mains in Chicago street proper with the pumping works. The legal title to the land whereon the pumping works are situated is vested in the municipality of Oconto, the defendant corporation entering into and holding possession under contract with the city for its conveyance. The complainant duly filed a claim for a lien upon the waterworks plant and the interest of the defendant company in the premises whereon the pumping works and well are situated, and to which the pipes are *44 connected. This bill is filed to foreclose that lien, and for a sale of the plant ancl the defendant’s interest in the land.
The defendant corporation was organized under the laws of the state of Wisconsin for the sole purpose of constructing and operating a system of waterworks within the city of Oconto, and of supplying the city and its inhabitants water for protection against fires, and for domestic, manufacturing, and other purposes. Under the power granted by Rev. St. Wis. § 1780, it contracted with the municipal corporation for its requisite consent to the use of its streets for laying water pipes therein, and for supplying the city with water. This contract took the form of an ordinance adopted by the mayor and common council of the city, and its terms were accepted by the defendant corporation. The city therein contracted for the use of a designated number of hydrants, and of a proper supply of water for use in public buildings and fountains and for the extinguishment of fires, at a specified yearly rental to be raised by annual tax upon all the taxable property within the limits of the city. The maximum rates to be charged the inhabitants for the use of water were regulated and established by the ordinance, and the right was reserved to the municipality to purchase the waterworks plant at the expiration of ten years, or any subsequent term of five years, upon a valuation to be determined by arbitration.
The lien law of the state of Wisconsin, (Rev. St. Wis. § 8814,) so far as it is applicable, if at all, to the case in hand, is as follows: The first paragraph provides:
“Every person who * * * furnishes any materials * * * in or about the * * * construction * * * of any building, * * * any machinery erected or constructed so as to be or become a part of the freehold upon which it is to be situated, * * * or in digging or constructing any well, * * * shall have alien thereupon and upon the interest of the owner of such building, * * * machinery, * * * well, * * * in and to the land upon which the same is situated, * * * used, or designed for use, in connection with such building, * * * machinery, * * * well,- * * * not exceeding one acre.”
The third paragraph of the section provides:
“In case any person shall order or contract for the purchase of any machinery to be placed in or connected to or with any building or premises, and such person, not having an interest in such building or premises in or connected with which such machinery is placed, sufficient for a lien, as provided for in this chapter, to secure payment for such machinery, the person furnishing such machinery shall have and retain a lien upon such machinery, and shall have the right to remove from such building or premises such machinery, in ease there shall be default in the payment of such machinery when due, leaving such building or premises in as good condition as they were before such machinery was placed in or on the same.”
It is insisted for the complainant that, under the first paragraph of the section, it has a lien upon the waterworks plant, considered as an entirety, or, failing that, under the third paragraph, upon the pipe itself, as machinery.
It is contended for the defendant (1) that the lien laws refer only to *45 such property as can be levied upon by execution, and that its property, being such only as is appurtenant and essential to the use and enjoyment of its franchises, cannot be taken on execution, and is therefore not comprehended within the statute; (2) that the plant of a water company is, from considerations of public policy, exempted from the operation of the lien statute; and (3) that the plant is an entirety, and the pipe furnished is not “machinery,” within the meaning of the third paragraph of the statute.
1. I am satisfied that the case does not fall within the third paragraph of the section. The plant must be treated as an entirety with respect to any sale under judicial process. The defendant is a quasi public corporation. The apparatus by -which a whole city is supplied with water cannot be permitted to be dismantled and sold in fragments, upon the claims of those furnishing the divers parts of the complicated and extended machinery. Whether this pipe is or is not technically “machinery,” within the meaning of this third paragraph of the statute, it was sold with knowledge of the character of the defendant as a quasi public corporation,’ and with the design and intent that it should be permanently affixed to and incorporated with the plant as a part of an entire thing. The plant is the integer. The pipe, hydrants, pumping works, and well are integral parts. Separation of the parts would destroy the efficiency of the whole, working destruction to all interests concerned. The detached parts would prove of little value, the entire enterprise would be aborted, the interests of both creditor and debtor sacrificed, and the public interest unnecessarily imperiled. It cannot be assumed that it was the legislative intent that this third paragraph should include such structures. Indeed, this paragraph would seem to be applicable only when the purchaser of machinery has no interest in the building or premises in or connected with which such machinery is placed, sufficient for a lien. The statute is a declaration that in such case the attaching of personalty to realty shall not be effective to defeat the lien. The purchased machinery remains personalty, as between vendor and purchaser. Here the defendant had an interest in the premises under contract for a conveyance. The structure here is of the class of which canals, street railways, railroads, telegraph, telephone, electric light, and gas plants are examples, and can only be dealt with as an entirety. Gue v. Canal Co., 24 How. 257; Brooks v. Railway Co., 101 U. S. 443, 451; Meyer v. Hornby, 101 U. S. 728; Hammock v. Trust Co., 105 U. S. 77; Improvement Co. v. Wood, 81 Wis., 51 N. W. Rep. 1004; Fond du Lac Water Co. v. City of Fond du Lac, 82 Wis., 52 N. W. Rep. 439.
2. It is contended that the property of a corporation, quasi public, is, from considerations of public policy, exempted from the operation of the lien laws of the state. We must seek for such public policy, if it exist, in the legislation of the state whose law is under consideration, and in the course of decision by the ultimate judicial authority of that state. It is of no moment to inquire touching the public policy of other states. If in antagonism to Wisconsin upon any given subject of public policy, *46 that of the state of Wisconsin would be the only criterion of judgment here. Thus the supreme court has declared its conviction that lien laws should not be interpreted as applicable to the property essential to the operation of a franchise by a quasi public corporation, (County Com’rs v. Tommey, 115 U. S. 122, 128, 5 Sup. Ct. Rep. 626, 1186,) but yields to the decisions of the courts of a state in the construction of its statutes, .and asserts such lien when sanctioned by the ruling of the courts of a state, (Brooks v. Railway Co., 101 U. S. 443, 452.) Looking, then, to the legislation of the state of Wisconsin, we discover a general policy to grant a lien for the construction of every article used, and for all labor •bestowed, in the erection of structures upon land, and for all labor and material employed in the construction, production, alteration, or repair of personal property. The architect who prepares the plan for the house, the surveyor who measures the ground, the material man and the laborer, are alike protected, and, as well, the cook who provides the food for the logger. Rev. St. Wis. c. 143. The state has been liberal in the exemption from execution of the personal property of the head of a family, but declares such exemption to be subject to payment of the purchase price of the exempt property, and of domestic labor performed for the family. Id. § 2982. The established policy of the state is that no one shall obtain property or labor without compensation; and, with respect to structures upon land, and many articles of personal property, payment is secured by specific lien.
Is there a public policy of the state of Wisconsin exempting the property of this defendant from the operation of the general lien law of the state because of its quasi public character, and because its business is intimately connected with the welfare of a locality? In Wilkinson v. Hoffman, 61 Wis. 637, 21 N. W. Rep. 816, it was ruled that lien laws do not apply to the property owned by municipal corporations and held for public use. In that case a lien was sought to be asserted upon machinery constituting a part of the city waterworks, owned by the municipality. The court declared the case to rest upon the same principle which exempts courthouses, jails, and other public buildings owned by the public, from the operation of lien laws. The decision accords with the rulings of most of the states, and finds its support in considerations of public inconvenience flowing from even a temporary suspension of the usual means for the exercise of governmental authority. Such public policy denies to the creditor the particular remedy of the statute by reason of the injury resulting to the public from its allowance. “ It is better to suffer a mischief which is peculiar to one than an inconvenience which may prejudice many.” The creditor is, however, assured of a certain and adequate remedy for the collection of his debt in the enforceable exercise of the power of taxation, continued until his debt be discharged. State v. Milwaukee, 25 Wis. 122. Otherwise the law of exemption would be a reproach upon the justice of the state.
This principle of exemption, so far as respects the state of Wisconsin, is limited to property held for public use, and owned by the state, or by one of its subordinate agencies of government. In Hill v. Railroad Co., *47 11 Wis. 215, (decided in 1860,) it was held that the lien law of the state was applicable to railroads. The same doctrine of public policy here asserted was there invoked to defeat the lien, and was thus denied by the court, (page 223:)
“It is said the public are interested in preserving railroads in an operative condition, and that if these liens are allowed to attach to their buildings, or creditors allowed to levy upon and sell their cars or other personal property necessary to the operation of the road, they will be rendered incapable of subserving the public interest; and several cases are referred to in which it has been held that judgment creditors could not levy on and sell the cars or any other personal property of the company necessary for the operation of the road, upon the ground that the railroad must be considered as an entire thing, and public policy required that these articles should not be severed from it. But, whatever merit there may be in this doctrine, we are clearly of the opinion that it cannot have the extent here claimed for it; and, on the contrary, it cannot be applied at all, except so far as the property has become entirely the property of the company, divested of all specific liens. When that has been done, if there is any reason for saying that a general creditor must take all or nothing, that is one thing; but it is an entirely different thing to say, when the company, by the very act of acquiring a particular portion of property, either by contract or by the force of law, creates a specific lien in favor of the vendor or manufacturer, or would create it unless hindered by public policy, that such lien shall not attach for that reason.” •
And, further on, the court declares:
“And there can be no conceivable reasons of public policy that should prevent the enforcement of such specific lien, by means of which the company had acquired the very property itself. And we can see no distinction, upon principle, between allowing such a lien to be created by the mortgage of the company, and allowing it to be done by the force of the statute. A building built for a railroad company is as clearly within the letter and spirit of the statute as any other building. The object was to furnish a protection to those who expended their labor and materials in improving the property of others. Is there anything in public policy that requires or should permit railroads to build, at the expense of defeating this object? If there is, we fail to perceive it, and shall recognize no such policy till the legislature enacts it into a positive law.”
In Purtell v. Bolt Co., 74 Wis. 132, 42 N. W. Rep. 265, (decided in 1889,) the lien laws were held to comprehend a railroad bridge, although it was part and parcel of the railway, and essential to its operation. The court observes, at page 135, 74 Wis., and page 266, 42 N. W. Rep.:
“But there is no public policy prevailing in this state against enforcing a laborer’s lien upon any bridge or other structure of a railroad company, for work performed thereon, no matter whether such structure is or is not part and parcel of the railway, or to what extent the enforcement of a lien thereon may interfere with or impede the operation of the railway, or the exercise by the company of its corporate franchises. On the contrary, the public policy of this state is to enforce such a lien, and the company operates its railway and uses its franchises subject to the obligation to pay the claim of the lienor as established by the judgment. All this was settled by this court in Hill v. Railroad Co., 11 Wis. 214, and the rules there established were not abrogated or shaken by the judgment in Wilkinson v. Hoffman, 61 Wis. 637, 21 N. W. Rep. 816, and have not been disturbed by any other adjudication of this court.”
*48 It thus appears that for more than a quarter of a century the public policy of the state has been to apply the lien laws to the property of quasi public corporations, and that no consideration of public convenience has been permitted to defeat the security accorded to all who labor or furnish materials for another’s use in the cases comprehended within the statute. But it is said there is a line of distinguishment- between such corporations as railway companies and those dealing directly with" matters of municipal concern, and that the latter class comes within the principle declared in Wilkinson v. Hoffman. This claim is based upon two grounds—First, because the former has an estate in land, and not a mere easement; and, second, that in the one case the corporation is organized and its property operated for and exclusively devoted to the purposes of -the public safety and the public health, while in the other the public convenience and business dispatch are merely incidents.
I conceive the first ground wholly untenable. The defendant here is in possession of the premises upon which the pumping works, and well are situated, under contract for a conveyance. That is an interest sufficient for a lien. Crocker v. Currier, 65 Wis. 662.[1] In that regard the defendant stands upon precisely the same footing as any other quasi public corporation owning property which under some form of judicial procedure may be subjected to the payment of debts. It is, moreover, to he noticed that the statute provides that the lien granted “shall also attach and he a lien upon the real property of any person on whose premises such improvements are made, such owner having knowledge thereof and consenting thereto.” The well and pumping works having been placed upon the premises with the knowledge and consent of the municipality, it would seem that the interest of the city of Oconto in the land might be also chargeable with the lien. Heath v. Solles, 73 Wis. 217, 40 N. W. Rep. 804. The lien here, therefore, if it exist at all, comprehends as well the legal as the equitable title, proper proceedings being had to so charge the property, and if the land, remaining the property of the municipality, but not held for public use, is subject to the lien of the statute, (see Darlington v. Mayor, etc., 31 N. Y. 164;) questions not presented by the record here.
With respect to the second ground urged, I am not able to perceive the distinction that is said to exist. It was urged upon the court, in an able and eloquent argument, that the railway is merely an economizer of time, and a promoter of comfort; that it does not deal with the actual necessities of the public; that without it, in the language of counsel, “commerce flourished, vast armies were equipped and moved, the arts reached their highest perfection, and the conditions of existence were as tolerable, relatively, then as now.” This view of the public character of the railway is altogether too narrow. True it is that the world has done without the railway. So, also, has it done without aqueducts. But in the march of events, and under the intense conditions of life imposed by modern civilization, the mere conveniences of the past have *49 become necessities of the present. We must deal with the present. The world will not be relegated to primitive conditions. Its motto is that of the state of Wisconsin, “Forward.” The past has no charm to stay the advance of civilization. The railway is a public necessity. The railway corporation is charged with the undoubted duty of government, to provide and maintain highways. It is one of the governmental agencies of the state. It is clothed with the power to exercise the right of eminent domain. This delegation of an attribute of sovereignty can be sustained only upon the ground that such corporation is essentially public in its character. Upon like grounds is upheld the authority of the legislature to regulate the rate of tolls and tariffs which may be demanded for the carriage of passengers and the transportation of freight. County Com’rs v. Tommey, 115 U. S. 122,128, 5 Sup. Ct. Rep. 626,1186. The railroad is intimately connected with public needs and public necessities. Its relation to society cannot be better stated than in the language of Mr. Justice Paine in Whiting v. Railway Co., 25 Wis. 167, 219, receiving the sanction of Mr. Chief Justice Ryan in Attorney General v. Railway Co., 35 Wis. 425, 581:
“Railroads are the great public highways of the world, along which its gigantic currents of trade and travel continually pour,—highways compared with which the most magnificent highways of antiquity dwindle into insignificance. They are the most marvelous invention of modern times. They have done more to develop the wealth and resources, to stimulate the industry, reward the labor, and promote the general comfort and prosperity of the country, than any other, and perhaps than all other, mere physical causes combined. There is probably not a man, woman, or child whose interest or comfort has not been in some degree subserved by them. They bring to our doors the productions of the earth. They enable us to anticipate and protract the seasons. They enable the inhabitants of each clime to enjoy the pleasures and luxuries of all. They scatter the productions of the press and of literature broadcast through the country with amazing rapidity. There is scarcely a want, wish, or aspiration of the human heart which they do not in some measure help to gratify. They promote the pleasures of social life and of friendship. They bring the skilled physician swiftly from a distance to attend the sick and the wounded, and enable the absent friend to be present at the bedside of the dying. They have more than realized the fabulous conception of the eastern imagination, which pictured the genii as transporting inhabited palaces through the air. They take a train of inhabited palaces from the Atlantic coast, and with marvelous swiftness deposit it on the shores that are washed by the Pacific seas. In war they transport the armies and supplies of the government with the greatest celerity, and carry forward, as it were on the wings of the wind, relief and comfort to those who are stretched bleeding and wounded on the field of battle.”
If added strength could be given to this vivid characterization, I would venture the suggestion that in a broader sense, and on a higher plane, the railway is intimately connected with the public welfare. It is a potential factor in our national life. It has, as I think, been a means of molding into indissoluble national union the states and the peoples of this land, more effective than written compact or the devices of statesmanship. It has bound the states in a network of interlacing bands of iron and steel that would prove most difficult to be severed. It brings *50 into constant and familiar intercommunication the peoples of different nationalities, foreign to each other and to us, that have sought homes here, fusing them with us into a homogeneous people, with like interests, like aims, and like destinies. It has harmonized the discordant interests of states widely separated, and made them interdependent. The personal welfare of each citizen has thus been made to coincide with the maintenance of the Union, and so the active and powerful agency of self-interest fortifies love of country to perpetuate nationality.
Counsel has drawn a lurid picture of the effects of a water famine in great centers like the cities of London, Paris, and New York, and therefrom would deduce the conclusion that water-supplying corporations are more immediately and more intimately connected with the public welfare than railway companies, and should therefore be clothed with the exemption of municipal corporations. The picture is possibly not overdrawn. Would not, however, the cessation of railway facilities, cutting off the food supply of those cities, be equally distressing? The late siege of the city of Paris furnishes fitting answer. Its investment, it is true, was accompanied with less distress than was anciently the result of siege, but because, and only because, the railway rendered possible the accumulation of vast supplies in anticipation of the event. Food supply and water supply are equally liable to be interrupted by the act of God or by the act of ugm, entailing privation and suffering. The vast populations of great commercial centers are as dependent upon the railway for food supply as upon aqueducts for water supply. The food supply, as the water supply, must be daily and continuous. The temporary interruption of railway traffic results in want and distress. Its permanent stoppage has for consequence famine, starvation, and death. I can perceive no ground of public policy that is not as applicable to the one as to the other. I search the legislation and course of decision of the state of Wisconsin in vain for a suggestion that a corporation organized for private gain, although dealing with subjects essentially public, is not to be subjected to the lien laws of the .state. Its property, privileges, and franchises are liable to taxation, although devoted solely to the supply of public needs. Fond du Lac Water Co. v. City of Fond du Lac, supra. By what right, then, can it claim exemption from the enforced collection of honest debts? The policy of the state accords with the highest equity. I concur with the supreme court of Ohio in Coe v. Railroad Co., 10 Ohio St. 372, that “the true policy of the state requires that just demands should be met, and that the property of those against whom they exist should be applied for that purpose,” and with Judge Paine in Hill v. Railroad Co., supra, that, notwithstanding the great public interest in railroad and waterworks, “sound public policy does not reqfiire them to be built any faster than can be done consistently with justice and the preservation of private rights.” Failing legislative exemption of any quasi public corporation, I am not disposed to sanction a doctrine that leads to inequality and injustice.
3. It is further urged that the statute does not apply, for the reason that no part of the material furnished by the complainant was laid upon *51 the land of which the defendant is in possession under its contract of purchase, and upon which the pumping works and well are situated. This piping was attached to the pumping works, and laid throughout the streets. The plant is an entirety. The pumping works are so constructed as, in the language of the statute, “to have become part of the freehold upon which they are situated.” The piping is merely an extension and continuation of the apparatus for the production and distribution of the water supply; is a part of it, and not separable from it without destroying the efficiency of the whole. In my judgment, it is so joined to the other parts that it must be deemed a part of the apparatus situated upon the premises of the defendant. The entire plant, with the interest of the defendant in the land, would pass under judicial sale upon foreclosure of the lien. The lien granted by the statute is upon the machinery, the plant, and upon the interest of the owner in the land. We need not now inquire how far the lien might be affected if that interest in the land should be overborne by superior title. Possibly a remedy might be found in the statute of betterments. Rev. St. Wis. § 8096. It suffices here that foreclosure of the lien would pass title to the plant and to the interest of the owner in the land. The principle announced has authoritative support. In Com. v. Gaslight Co., 12 Allen, 75, and in Gaslight Co. v. State, 6 Cold. 311, it was held that gas pipes laid in the streets of a city constituted part of the apparatus. In Manufacturing Co. v. Gleason, 36 Conn. 86, a blowpipe, conveying air from a blower to a forge, was held part of the blower. In Derrickson v. Edwards, 29 N. J. Law, 469, a flume 100 feet in length, for the conveyance of water from a pond to a wheel within a mill, was declared to be “as necessary and as fixed contrivance for making paper at that establishment as the water wheel and the breast shaft and the grinding engines are,” and covered by alien upon the mill. In Kenney v. Apgar, 93 N. Y. 539, a lien upon a building and land was sustained for the expense of a sidewalk in the street adjoining the premises, although the owner’s title extended only to the sidewalk; the sidewalk being declared an appurtenant to the land, within the meaning of the act. In Beatty v. Parker, 141 Mass. 523, 6 N. E. Rep. 754, a lien was asserted upon a house for a drain pipe connecting the house with a sewer in an adjoining street. The court remarked that it made no difference whether the owner of the house had any interest in the land through which the pipe was laid, except the mere right to lay the pipe therein. The drain pipe was'necessary to the use of the house, and a part of it; hence the lien would lie. In Re Des Moines Water Co., 48 Iowa, 324, the land, building, and water mains of the company were held to be real estate, and that the mains, although not laid upon the lot, were appurtenant to the main structure, and would pass as an incident to the principal thing. See, also, Capital City Gaslight Co. v. Charter Oak Ins. Co., 51 Iowa, 31, 50 N. W. Rep. 579. In Steger v. Refrigerator Co., 89 Tenn. 453, 14 S. W. Rep. 1087, the defendant erected machinery on its land to manufacture and furnish vapor for cold storage. The cold *52 vapor was conveyed in pipes laid through the streets. It was held that the pipes, being essential to the enterprise, with the license of easement under which they were laid, would pass under a sale of the property as an entirety. A lien was allowed upon the lot and plant for material and labor furnished in respect of the pipes. In Badger Lumber Co. v. Marion Water Supply, etc., Co., 29 Pac. Rep. 476; on rehearing, 30 Pac. Rep. 117,—the supreme court of Kansas adjudged a mechanic’s lien upon an electric power plant, and the premises upon which the plant was situated, for poles placed in the public streets, and upon which were stretched the wires connected with the electric light machinery. In Brooks v. Railway Co., 101 U. S. 443, a lien for materials and labor upon one section of a railway was extended over the entire road. This is an instructive case. The company was organized to build a railroad from Burlington, Iowa, to some point on the Missouri river. Prom Burlington to Viele the company used the track of another company; from Viele to Bloomfield the company built and paid for its own track; from Bloomfield to Moulton the company used the track of another company; and from Moulton, Iowa, to Unionville, Mo., it built its own road. The materials and labor for which a lien was claimed were furnished and done upon this latter piece of road. It was urged in resistance of the claim that the road was built in sections, and that there was such a,separation in space and time that they could not be considered as one improvement. The lien was, however, declared upon the road, right of way, stations, etc., of the company, from Viele junction to the south state line of Iowa; the, court asserting that “the intersection of fourteen miles of another road between Bloomfield and Moulton does not destroy the identity of the improvement, nor convert it into two railroads.”
The supreme court of Wisconsin, in considering the statute in question, has adopted a like liberal construction of the law, with a view to securing the benefit of a lien to those whose rights were sought tobe protected. The statute accords a lien to one who furnishes labor or materials in or about the construction of the building or machinery, “ constructed so as to become part of the freehold upon which it is to be situated.” Notwithstanding this language, that court, in Spruhen v. Stout, 52 Wis. 517, 524, 9 N. W. Rep. 277, allowed a lien for a draft tube, procured and designed to be attached or permanently annexed to the mill, but which, in fact, had not been attached. The effect of this decision is that, if the principal structure be a part of the freehold, there exists a 'lien thereon for parts furnished with the intent to be affixed, but not in fact attached. With greater reason should a lien be allowed upon the prim cipal structure for piping attached and constituting an essential and indispensable part of the plant. The case of Eufaula Water Co. v. Addyston Pipe dc Steel Co., 89 Ala. 552, 8 South. Rep. 25, stands opposed to the cases cited, and to the holding here. It is only necessary to observe, with respect to that case, that, as I think, it gives but narrow interpretation to the statute, and evidences adherence to the strictest letter of the *53 law, in despite of its manifest purpose. The decision is in sharp contrast with the holding in Brooks v. Railway Co., and the liberal construction adopted by the supreme court of Wisconsin,
I am persuaded to the conclusion that the fact that the piping is laid within the streets presents no objection to charging its cost asa lien upon the plant and the parcel of ground upon which the pumping works and well are situated.
4. It is further insisted that the lien statute has reference only to property that may be sold on execution, and that the plant here, being such only as is essential to the use and enjoyment of the franchise, cannot be taken in execution, and is therefore exempted from the operation of the law. In support of this contention the court is referred to the following authorities: Foster v. Fowler, 60Pa. St. 27; Guest v. Water Co., 142 Pa. St. 610, 21 Atl. Rep. 1001; Foundry Co. v. Bullock, 88 Fed. Rep. 565; Harrison & Howard Iron Co. v. Council Bluffs City Waterworks Co., 25 Fed. Rep. 170. The first is the leading case. Guest v. Water Co. is but an echo. Foundry Co. v. Bullock is re’sted solely upon grounds of public policy, citing in support Foster v. Fowler, and the decision of the supreme court of Wisconsin in Wilkinson v. Hoffman; not, however, distinguishing between a corporation municipal and one quasi public, nor referring to Hill v. Railroad Co., where the distinction is asserted. Harrison & Howard Iron Co. v. Council Bluffs City Waterworks Co. does not pass upon the question. In Foster v. Fowler, a water company incorporated for the purpose of introducing water into certain boroughs, for the use of the inhabitants of those boroughs, was sought to be subjected to the operation of the mechanic’s lien law of Pennsylvania, with respect to its property essential to the operations of its franchise. The court declared against the lien, saying that corporations “ for the building of bridges, turnpike roads, railroads, canals, and the like,” are agencies of the public, “directly interested in the results to be produced by such corporations in the facilities afforded to travel and the movements of trade and commerce,” and that the use of the franchise “is not to be disturbed by the seizure of any part of their property, essential to their active operations, by creditors. They must recover their debts by sequestering their earnings, allowing them to progress with their undertaking to accommodate the public.” The court quotes approvingly the remarks of Sergeant, J., in Canal Co. v. Bonham, 9 Watts & S. 27, that—
“The privileges granted to corporations to construct turnpike roads, etc., are conferred with a view to the public use and accommodation, and they cannot voluntarily deprive themselves of the lands and real estate and franchises which are necessary for that purpose; nor can they be taken from them by execution, and sold by a creditor, because to permit it would defeat the whole object of the charter, by taking the improvements out of the hands of the corporation, and destroying their use and benefit.”
The court further observed:
“We think the remark of Lowrie, J., in Williams v. Controllers, 18 Pa. St. 275, is in point here, ‘ that, where there can be no execution, there can be no action,’ and that is as true in this case, if we are right in the character we have assigned to this corporation, as it was in that. ”
*54 In the case referred to, a mechanic’s lien was denied for materials furnished in the construction of a public schóolhouse; the quoted remark of Judge Lowrie being used in this connection:
“Where there can he no execution, there can be no action, and as a levari facias is the only execution proper on a judgment on a mechanic’s lien, and as that sort of execution is not allowed against a county, it follows that this form of action cannot be sustained, if these defendants come within the meaning of the word ‘county.’”
Judge Lowrie then proceeded to show that the statute exempts from execution all public corporations.
I have quoted at length from the opinion in Foster v. Fowler because it becomes important to ascertain the precise reasons upon which that decision is grounded, with a view to ascertain whether the principles declared can be applied to. conditions prevailing within the state of Wisconsin. The supreme court of Pennsylvania, it will be perceived, bases its holding upon two grounds: First, because of the public character of the enterprise; that therefore, as the corporation itself cannot voluntarily deprive itself of its property essential to the purpose of its organization, so-it cannot be taken by creditors; and, second, and quite incidentally, that, “where there can be no execution, there can be no action.”
.With respect to the first ground, if I have correctly interpreted the-decisions of the supreme court of Wisconsin, the public character of the enterprise is not allowed to defeat the application of the general laws of the state to a private corporation. The policies of the two states in this regard would seem to be widely divergent, and the decision of the one-cannot be allowed to control the policy of the other. It would also appear from the observation of Judge Sergeant that in Pennsylvania a quasi public corporation cannot voluntarily deprive itself of its property essential to the exercise of its franchise, and that the right of the creditor to take corresponds with the right of the debtor to alienate. It is-not so in Wisconsin. Here the corporation may “take and hold property, both real and personal, * * * and sell, convey, or otherwise dispose of the same;” may “mortgage its franchises, tolls, revenues, and property, both real and personal, to secure the payment of its debts, or' to borrow money for the purposes of the corporation,” (Rev. St. Wis. § 1748, subds. 6, 7,) and may lease, sell, convey, or assign its franchises and privileges conferred by law to any corporation, where such rights, would be in direct aid of the business of the purchasing corporation, (Id. § 1775a, as amended by chapter 127, Laws 1891.) . In the exercise of these powers of alienation, the corporation stands upon like footing with an individual, and subject to like liability to involuntary alienátion. In the absence of express legal exemption, “ it is an inseparable incident to property that it should be liable to the debts of the owner, as it is to his alienation.” Hough v. Cress, 4 Jones, Eq. 295, 297. No such exemption- is expressed upon the statute book. To the contrary, it is most manifest that the legislature designed that the property of all private corporations, purely private or quasi public, should be subject to sale for the payment of debts. In the case of the latter *55 class, to avoid arrest of the enterprise, and public inconvenience resulting from alienation, voluntary or involuntary, the law enacts that the purchasers of the franchise of any corporation, by purchase at sale under mortgage, in bankruptcy, or under judgment, order, decree, or proceedings in any court, may organize anew, and shall be vested with the rights, privileges, and franchises of the old corporation. Rev. St. Wis. § 1788. I conclude, therefore, that the ruling in Foster v. Fowler, as to the first ground upon which it is based, is not applicable here.
With respect to the second ground upon which the decision of that case is placed, that, “where there can be no execution, there can be no action,” it has been seen that the phrase occurs in Judge Lowrie’s opinion, holding that a mechanic’s lien cannot be enforced against a municipality. Not content to rest his judgment, as it might well have been rested, upon the broad ground of public policy, he prefers to base his conclusion on the more technical objection that by the statute of the state a mechanic’s lien could only be enforced by levari facias,—a writ peculiar to the state of Pennsylvania,—and such a writ could not by law issue against a public body. Such ground of decision is wholly inapplicable in the state of Wisconsin, where the lien is foreclosed in equity, and the sale is under decree, and property of corporations may be sold under decree to enforce payment of debts. Upon this phrase, so employed, rests the whole contention that the lien laws apply only to property that can be sold under a writ of execution. It must be borne in mind that in Pennsylvania there exists no separate equity jurisdiction, as here. All judgments there are enforced by some sort of writ of execution, and are not, so to speak, self-executing, as is a decree in equity here. The phrase must be interpreted in the light of that fact. „ The term “execution” is there employed, as I think, in a broad sense, comprehending all means by which the judgments or decrees of courts are enforced. In such sense, the phrase is well enough as a test, whether an asserted right is given by statute, although modern legislation, permitting actions against federal and state governments without power of enforcement by the courts, presents an exception to the rule. In general the right to judgment or decree necessarily carries with it the right of enforcement of satisfaction, and where, by reason of public policy, the right cannot obtain, it is held the statute does not embrace the par-, ticular right asserted. Property exempt from sale under any judicial proceeding, upon grounds of public necessity, is not within the operation of the lien laws, and for the like reason, unless, the law so expressly declares. In other words, the exemption goes to the character of the use of the property, and not to the form of the writ or proceeding by which the right is enforced.
Judge Dillon correctly apprehends the rule when he says, speaking of the exemption from the operation of the lien laws of municipal property held for public use: “It is only such property as can be sold under judicial process that is subject to such liens. Laws creating liens in favor of mechanics are enacted with reference to that class of property.” Dill. Mun. Corp. (4th Ed.) § 577. In Badger Lumber Co. v. Marion *56 Water Supply, etc., Co., (Kan.) 80 Pac. Rep. 117, the rule is thus stated: “The general rule is that property of a corporation which may be sold under a mortgage or specific lien given by the owner may be subjected to a mechanic’s lien.” In whatever variety of language the rule may be formulated, the right to the lien corresponds with the right of the debtor to alienate, subject only to limitation founded upon grounds of public policy. In most states the lien is enforced by writ of execution; here by foreclosure, as in case of a mortgage. All other lienholders for construction may join as plaintiffs, or, refusing, be made defendants. All .subsequent lienholders or purchasers are to be made parties, and foreclosed of. their interests. The sale is by decree, and absolute, without redemption, as in the case of a sale under execution. Rev. St. Wis. §§ 3321, 3324, 3326. If there can be no action where there can' be no common-law writ of execution, the lien law of Wisconsin would be wholly inoperative, and inefficient for any purpose. The contention cannot be upheld. The lien law of Wisconsin applies to all property which is the subject of alienation by the debtor, and of sale under whatever form of judicial writ or proceeding. It does not apply to the property of municipal corporations held for public use, because such property is not the subject of judicial sale while so held. But the property of all corporations, private or quasi public, is so subject under some form of judicial proceeding. I discover in the statutes no exemption. Actions against them may be brought as against natural persons, (section 3204;) and, after judgment at law and return of execution nulla bona, the court may sequestrate the stock, property, and effects, and appoint a receiver, (section 3216,) and distribute its property among the creditors, ^section 3217.) In the case of toll-taking corporations, the franchise and the property may be sold upon execution in the manner prescribed. (Sections 3229, 3235.) A quasi public corporation being, then, not exempt by reason of any public policy, and expressly subjected to the laws for the enforced payment of debts, the case of Foster v. Fowler cannot be applied here. The lien of the statute obtains unless the objection next to be considered avails to defeat the right.
5. It is lastly urged that the plant,is essential to the use and enjoyment of the franchise, and inseparable from it, and that therefore the lien of the statute cannot he enforced. It was said by Mr. Justice Cassoday in Improvement Co. v. Wood, 82 Wis.--, 51 N. W. Rep. 1004:
“The rights, franchises, and plant essential to the continued business and purposes of such corporations are not to be severed, broken up, or destroyed, without express legislative authority, but, on the contrary, are to be preserved in their entirety. ”
It was also asserted by Mr. Justice Pinney in Fond du Lac Water Co. v. City of Fond du Lac, 81 Wis..-, 52 N. W. Rep. 439, 441:
“In virtue of the intimate and necessary relation of the lots and the mains, pipes, and hydrants, which extend to most parts of the city, with the franchises and privileges of the plaintiff, it would seem that, as a subject of taxation, as well as of sale under judicial process, they are to be regarded as an entirety; and, as the plaintiff is a quasi public corporation, a dismember *57 ment,—a separation of the entire plant,—under such proceedings, cannot be allowed.”
I fully concur with the declarations of these able jurists. I assume that the term “franchise,” as there employed, refers to the privilege to maintain and operate the plant, and not to the franchise to exist as a corporation; the former being the subject of transfer, the latter not transmissible. Memphis, etc., R. Co. v. Commissioners, 112 U. S. 609, 619, 5 Sup. Ct. Rep. 299. When then results? The incorporation of the material for which a lien is here claimed into a plant operated under a franchise was the act of the defendant. The plant and franchise may not be severed by judicial sale, because of the peculiar public use to which the plant is devoted. The law gives a specific lien upon the plant for the material incorporated into it. Does the inseparable character of franchise and plant present an insuperable obstacle to the enforcement of a right given by the law? I think not. The defendant operates its plant “and uses its franchise subject to the obligation to pay the claim of the lienor.” Purtell v. Bolt Co., 74 Wis. 132, 135, 42 N. W. Rep. 265. Since, then, the act of union was by the procurement of the defendant, and by severance of franchise and plant, the latter would become of little worth, and the paramount public welfare forbids their separation, in the interest of both creditor and debtor, in the interest of the public, and as a matter of common equity, plant and franchise should be decreed to be sold as an entirety. I think it within the inherent powers of a court of equity to so decree; not that the lien embraces the franchise, but because plant and franchise have, by act of the defendant, been rendered inseparable. The plant has been applied to a public use. The public welfare requires that use to be uninterrupted. A court of equity may therefore well require that the right to the use shall follow the tangible property devoted to that use, and dependent upon it. It may well be required that, upon subjection of the plant to sale in satisfaction of the lien granted by the law, the franchise to maintain and operate it for the public use shall be sold with it, as an essential incident to it; treating plant and franchise as an entirety. Otherwise, a judicial sale would work destruction to both plant and franchise. The course suggested is conformable to equity. It conserves the public welfare. It preserves this property to public use, giving to the purchaser the estate as the defendant has it. It renders to the complainant a right given it by the law. It operates not unjustly upon the defendant, since thereby its property, subjected by the law to sale, is preserved from sacrifice necessarily resulting from separation of franchise and plant. It is demanded by the exigency of the occasion that equity should supplement and effectuate the law. Indeed, if, as a matter of strict legal right, the franchise to operate does not inhere in the tangible property necessary to its use, as an essential incident to it, I think that in a court of equity the defendant may well be deemed, by his act of devoting this plant to public use under its franchise, thereby rendering it inseparable therefrom, to have assented that upon its sale, voluntary or involuntary, the franchise to operate should pass with it.
*58 The case is peculiar and somewhat novel. I believe the course proposed to be grounded on acknowledged principles of equity. I think, also, that it has the support of high authority. It is recognized in the statute which authorizes reorganization of purchasers of the franchise at sale in bankruptcy or under judicial decree. Rev. St. Wis. § 1788. In Drawbridge Co. v. Shepherd, 21 How. 112, upon bill filed to enforce payment of a judgment at law against a bridge company, the court held that it was within the province of a court of equity, without statutory sanction, to cause possession to be taken of the bridge, to appoint a receiver to collect tolls, and to cause them to be applied in discharge of the judgment. In Gue v. Canal Co., 24 How. 257, 264, Mr. Chief Justice Taney, without ruling upon it, suggests the precise remedy here asserted, In Railroad Co. v. James, 6 Wall. 750, on appeal from this court, complainant had obtained judgment at law against the La Crosse & Milwaukee Railroad Company, and filed his bill to declare the lien of his judgment and for a sale of the road. The court entered a decree declaring the lien, and directing a sale. The report of the case upon appeal does not disclose the terms of the decree, but, as appears, from the records of this court, it directed a sale of—
“All and singular, the railroad property known as the ‘La Crosse & Milwaukee Railroad,’ from Milwaukee to Portage City, its depots, station houses, and buildings, together with all its rolling stock, franchises, and appurtenances now in possession of or claimed by the Milwaukee and Minnesota R. R. Co.”
Upon appeal the decree was affirmed; the court observing, after declaring the lien of the judgment:
“We do not doubt that a sale under a decree in chancery, and conveyance in pursuance thereof, confirmed by the court, passed the whole interest of the company existing at the term of its rendition to the purchaser.”
There would seem to be no escape from the binding authority of this case. The lien of a judgment and that arising under the mechanic’s lien laws are at least of equal dignity, both being the creatures of statute, and there is no distinction in principle between the creation of lien by mortgage or by statute. Hill v. Railroad Co., 11 Wis. 223, 233. If, in the enforcement of the lien of a. judgment upon the real estate of a corporation quasi public, its franchises to operate the property for public use may be sold with the property, I fail to understand why similar action may not be taken by a court of equity with respect to the enforcement of a mechanic’s lien. In Railroad Co. v. Delamore, 114 U. S. 501, 5 Sup. Ct. Rep. 1009, it was ruled that the franchises of a railroad company, which can be parted with by mortgage, will pass to the assignee in bankruptcy, and may be sold under decree. The court declares, (page 510:)
“It follows that, if the franchises of a railroad corporation can by law be mortgaged to secure its debts, the surrender of its property upon the bankruptcy of the company carries the franchises, and they may be sold and passed to the purchaser at the bankruptcy sale.”
And there, as here, the surrender or subjection of the property to the creditor was involuntary, and by compulsion of law. In the case of *59 Hammock v. Trust Co., 105 U. S. 77, 89, the court held that state laws authorizing redemption from sales of real estate could not be applied to the real estate of a corporation operating its property under a franchise and for public use. The court decreed an absolute sale, because “a sale of the real estate, franchise, and personal property separately might in every case prove disastrous to all concerned, and defeat the ends for which the corporation was created.” In Steger v. Refrigerator Co., supra, the supreme court of Tennessee declared “that the pipes, and the license or easement under which they are laid, would certainly pass under a sale of the property as an entirety, and for operating purposes, no reservation being made.” So, also, in the case of Railroad Co. v. Parker, 9 Ga. 377, where judgment creditors were proceeding to sell separate portions of the railroad, a court of equity arrested the executions, and decreed a sale of the road, “with all the rights, franchises, and property connected therewith,” and distributed the proceeds among creditors according to their respective rights. The eminent Judge Lumpkin, reviewing this decree, observes:
“The chancellor, then, in taking this matter in hand, and directing a sale of the entire interest for the benefit of all concerned, was but invoking the powers of equity to aid the defects of law, and applying analogous principles to the existing emergency; and, so far from transcending his authority, he is entitled to the thanks of the parties and the country for the correct and enlightened policy which he adopted. Had he faltered, or shunned the responsibility thus cast upon him, he would have shown himself unworthy of the high office which he filled. As it is, this precedent will stand in bold relief as a landmark for future adjudications.”
I follow these landmarks, guiding me, as I think, to a correct conclusion.
Let there be a decree for complainant, declaring a lien for its debt upon the waterworks plant and upon the interest of the defendant in the premises in question; directing a sale of the plant, and such interest in the lands, and of the franchise of maintaining and operating the plant for the uses to which it is devoted by the law of the defendant’s incorporation, as an entirety, and that the proceeds of sale be brought into the registry of the court, for distribution among all who may show right thereto.

 27 N. W. Rep. 825.