# CLEARWATER COUNTY STATE BANK v. BAGLEY-OGEMA TELEPHONE COMPANY and Others.[1]

November 3, 1911.

Nos. 17,277—(47).

**Estoppel against corporation.**

Where a corporation obtains a loan of money on its notes or bonds, secured by a mortgage which appears to have been executed on behalf of the corporation by its president and secretary, with authority of its board of directors, it being within the powers of the corporation to execute such a mortgage, and the proceeds of the loan being used for corporate purposes, such corporation is estopped from asserting the defense that such mortgage was not in fact authorized by its board of directors, or that the person signing as secretary was not the secretary; the mortgagee not having notice of such defects.

**Sale of bonds below par — usury.**

Where a telephone company borrows money for its corporate purposes, secured by mortgage on the whole or part of its property and franchises, and its bonds or notes are issued for the loan so secured, bearing interest at the rate of not exceeding six per cent., section 2902, R. L. 1905, applies. It is not usury, in the absence of an intent to evade the usury law, if the bonds or notes are sold at less than their par value, or if the lender discounts the same, although the result be an agreement to pay more than the lawful rate of interest.

**Finding sustained by evidence.**

The evidence sustains the finding that there was no intent to exact usury.

**Telephone company — foreclosure of mortgage — right of redemption.**

Where a public service corporation, such as a telephone company, mortgages its franchises, easements, and its entire property, both real and personal, and it appears, by reason of the character and condition of the mortgaged property, that the plant is an integer, and that the real estate cannot be sold separately from the personal property, without greatly impairing the value of the whole, to the detriment of all concerned, the mortgaged property should, on foreclosure, be sold as an entirety, without right of redemption as to the real estate, notwithstanding the statute giving a right of redemption from foreclosure sales of real estate.

[1] Reported in 133 N. W. 91.

**Intent to evade usury statute.**

> It is not material that the bonds or notes were made payable to the lender, or that the transaction was in form a loan, rather than a sale of bonds, as long as there was no intent to evade the usury law.

Action in the district court for Clearwater county for the appointment of a receiver of the Bagley-Ogema Telephone Company, for the purpose of collecting rents and profits during the pendency of the action and applying the same to repair and maintenance of its lines and exchange; to adjudge the amount due plaintiff on certain promissory notes given by that company; to direct a sale of the mortgaged property and the application of the proceeds thereof to the payment of plaintiff, and that the defendants be barred from claiming any equity of redemption in the mortgaged property. The separate answers alleged that the mortgage was executed without authority of its board of directors. The replies were general denials. The case was tried before Stanton, J., who made findings of fact and as conclusion of law ordered judgment in favor of plaintiff for $6,360 and for a sale of the mortgaged property as a whole and a unit as upon sale of personal property on execution. From the judgment entered pursuant to the findings, defendants appealed. Affirmed.

*W. A. Marin, Morphy, Ewing & Bradford,* and *Deutsch, Allen & Breding,* for appellants.

*William A. McGlennon* and *M. J. Daly,* for respondent.

Bunn, J.

This action was brought by the plaintiff bank to foreclose a mortgage made to it by defendant Bagley-Ogema Telephone Company, January 15, 1909, to secure twelve promissory notes or bonds, each for the sum of $500, made payable to plaintiff. The mortgage covered the franchises, telephone lines, equipment, and all the other property of the mortgagor. The defendants Northwestern Electric Equipment Company and Western Electric Company are judgment creditors of the telephone company, having liens subsequent to the mortgage.

Defendants answered separately, each pleading that the mortgage

was executed without authority of the board of directors of the mortgagor. The telephone company also pleaded usury. The issues were tried, and the court rendered a decision for plaintiff, ordering judgment of foreclosure. Defendants appealed from the judgment entered pursuant to such decision.

1. The board of directors of the telephone company did not authorize the mortgage. It purported to be executed on behalf of the corporation by E. J. Warren, its president, and L. O. Warren, its secretary, and the acknowledgment recites that it was signed and sealed on behalf of the corporation by authority of its board of directors. It is undoubtedly true that the president and secretary of defendant had no authority to execute the mortgage, without the action of the board of directors acting as a board assembled at a board meeting. But if it was within the powers of the corporation to execute such a mortgage, and if the corporation received and used the proceeds of the loan for corporate purposes, it is estopped, as against a mortgagee who had no notice of the want of authority of the officers, from asserting the invalidity of the mortgage. Defendants do not dispute this proposition. They concede that the corporation had power to borrow money, or sell its bonds, and give a mortgage on its property to secure the debt, and that the money received was used for corporate purposes, but insist that plaintiff had notice that the board had not authorized the mortgage.

This contention is based upon the claim that M. J. Kolb, president of the plaintiff bank, had been a stockholder and director of the telephone company, and therefore that he knew that the board of directors had not authorized the mortgage. But the evidence showed that Kolb had ceased to be a stockholder in the company some two weeks before the mortgage was executed. Therefore, granting that notice to him would be notice to plaintiff, we are satisfied that the evidence does not show that Kolb had any knowledge, either that the board had not authorized the execution of the mortgage, or that L. O. Warren was not entitled to act as secretary. There is no suggestion of fraud or bad faith, and the evidence shows that plaintiff parted with its money in the full belief that the mortgage was valid. It is a clear case of estoppel.

2. The defense of usury is based upon the fact that, while the notes call for the payment of $6,000, due in three years, with six per cent. interest, the bank paid and the company received but $5,245. It is apparent that, adopting the usual rule of computation, plaintiff would receive more than ten per cent. on the money loaned. It is argued that every essential element of usury exists; that is, that there was a loan of money, that the money was to be returned at all events, and that more than the lawful rate of interest was stipulated to be paid for it. All this is true, and it might be difficult to escape the conclusion that there was usury in the transaction, were it not for the provisions of R. L. 1905, § 2902, the material part of which reads as follows:

"Telegraph and telephone companies may mortgage or execute deeds of trust of the whole or any part of their property and franchises to secure money borrowed by them for the construction and equipment of their lines and properties and for other corporate purposes, and issue their corporate bonds in sums of not less than five hundred dollars, secured by such mortgages or deeds, and if payable to bearer, negotiable by delivery, bearing interest at the rate of not exceeding six per cent. per annum, and convertible into stock or not as may be deemed expedient, may sell them at such prices as they deem proper; and if said bonds shall be sold below their normal or par value they shall be valid and binding on the company, and no plea of usury shall be put in by, or allowed to said company in any suit thereon."

We think that this statute applies to this case. Its intent is clear to enable telegraph and telephone companies to borrow money for the construction and equipment of their lines and other corporate purposes, without the chance to repudiate their obligations on the plea of usury, and without investors being deterred by such chance. It is not important that the bonds or notes were payable to plaintiff, or even that the transaction took the form of a loan, rather than a sale of bonds. The material things are that the borrower was a telephone company, that the mortgage covered its property and franchises, and that the money was borrowed for corporate purposes. The evidence is clear that plaintiff paid all that the notes were worth,

and the transaction was in effect, if not in form, a sale of its bonds at their real, but below their par, value. The statute says that the bonds are valid and binding on the company, and that no plea of usury shall be allowed.

We think this disposes of the defense of usury, in the absence of an intent to evade the usury law. The decision for plaintiff necessarily involves a finding by the trial court that there was no such intent, and this finding is amply sustained by the evidence.

3. Defendants urge that it was error to order a sale of the property of the telephone company as an entirety, without redemption. The argument is that the franchises and easements of the company are incorporeal hereditaments, and therefore real estate, and that a foreclosure sale of real estate, without the right of redemption, is contrary to R. L. 1905, § 4480, and therefore illegal. It is clear that the right of redemption is an inseparable incident of every mortgage of real estate, and equally clear that there is no right of redemption from a judicial sale of personal property. Conceding that the franchises and easements of the telephone company are real estate, yet a large part of the property mortgaged was personalty— poles, wires, instruments, and switchboards. The company was a public service corporation, quasi public in character. The trial court found that the franchises and other property covered by the mortgage are so connected and related to each other that the value of the one would be greatly impaired by the severance therefrom of the other; that they are and do form a unit, and are of little value when not used and operated as a whole, and would be of small value to a purchaser, if sold separately.

The decisions are uniform that where a mortgage covering the franchises and other property, real and personal, of a quasi public corporation, such as a railroad, canal, water, gas, telegraph, or telephone company, is foreclosed, the sale should be of the property as an entirety and without right of redemption, notwithstanding statutes giving a right of redemption from foreclosure sales of mortgaged real estate. The cases base this rule on the public character of the corporation and on the character of the property mortgaged.

In National Foundry & Pipe Works v. Oconto Water Co. (C. C.)

52 Fed. 43, a waterworks case, Judge Jenkins says: "The plant must be treated as an entirety with respect to any sale under judicial process. The defendant is a quasi public corporation. * * * The plant is the integer. * * * Separation of the parts would destroy the efficiency of the whole, working destruction to all interests concerned. * * * The structure here is of the class of which canals, street railways, railroads, telegraph, telephone, electric light, and gas plants are examples, and will only be dealt with as an entirety."

The supreme court of North Dakota, in a waterworks case, McKenzie v. Bismarck, 6 N. D. 361, 71 N. W. 608, applied the rule, saying that the cases were unanimous that, notwithstanding statutes clearly giving a right of redemption from sales of real estate on judicial process, property such as was embraced in the mortgage under consideration in that case should be sold as an entirety without redemption. We quote from the opinion:

"The Bismarck Water Company is not merely a private enterprise. It is also a corporation of a quasi public character, and has peculiar relations and duties with respect to the public. The property and franchise described in the mortgage, while primarily consisting of both real estate and personal property, is so blended together and reciprocal in its uses that to divide it, and sell each part separately— one part with and one part without the right of redemption—would destroy or greatly impair the value of the same, to the serious detriment of both public and private interests."

To the same effect are Hammock v. Loan & Trust Co. 105 U. S. 77, 26 L. ed. 1111; Peoria v. Thompson, 103 Ill. 187; Farmers Loan & Trust Co. v. Iowa Water Co. (C. C.) 78 Fed. 881; Sioux City Terminal R. & W. Co. v. Trust Co. of N. A. 82 Fed. 124, 27 C. C. A. 73; Pacific Northwest Packing Co. v. Allen, 116 Fed. 312, 54 C. C. A. 648; McFadden v. Mays Landing, 49 N. J. Eq. 176, 22 Atl. 932.

We hold that by reason of the necessity arising from the character and condition of the property mortgaged, as well as because of the quasi public character of the defendant telephone company, it was correct to order a sale of the mortgaged property as an entirety, with-

out right of redemption, notwithstanding the statute giving a right of redemption from foreclosure sales of real estate.

4. It is claimed that the trial court erred in finding that the notes were sold and discounted by the telephone company to the bank. As we have said, it was immaterial what the form of the transaction was, whether a loan or a sale of bonds, and we therefore consider it unnecessary to decide whether this finding is supported by the evidence. We are satisfied that the trial court disposed of the case correctly, and that the judgment should be affirmed.