167 P.2d 107

## FISH et al. v. VALLEY NAT. BANK OF PHŒNIX.

### No. 4758.

Supreme Court of Arizona.

March 25, 1946.

166

Dodd L. Greer, of Holbrook, for appellants.

William C. Eliot, of Phœnix, for appellee.

MORGAN, Judge.

This action was instituted by H. D. Lore, trustee, doing business as Lakeside Light & Power Company, against the defendants who appear here as appellants. During the pendency of the appeal, Lore died, and his executor, Valley National Bank of Phœnix has been substituted as appellee. R. S. Lewis is merely a nominal party. Minnie A. Fish is a party by reason of her marital relationship. For convenience the parties will be styled as plaintiff and defendant.

The facts may be stated briefly as follows: During the year 1938 plaintiff was engaged in the business of buying and selling machinery and equipment in Arizona. The defendant owned a light and power business at Lakeside, in Navajo County, which was in need of rehabilitation. On September 22, 1938 plaintiff and defendant entered into a written agreement, whereby defendant agreed to transfer to plaintiff, as trustee for Lakeside Light & Power Company (a trade name), all interest in the electric utility owned and operated by defendant. Under this agreement, plaintiff was to finance the reconditioning of the various transmission lines and installations to properly supply the town of Lakeside and vicinity. He was to collect and retain all income from the sale of electric energy, and apply the proceeds to the liquidation of the indebtedness required to recondition the plant, to the expense of the operation, and the proper maintenance of the service. It was estimated that equipment required for installations could be paid for within three years, by monthly payments out of the proceeds of operation. The balance of proceeds, after the expenses and maintenance charges were paid, was to be placed to the credit of Lakeside Light & Power Company. The plaintiff was to receive no compensation for his services, and when the indebtedness was fully paid, the property was to be reconveyed to defendant. It was estimated that $6,000 would be required for installations, and the parties secured an order from the corporation commission authorizing the utility to incur debts to that amount. Before anything could be done under this agreement, the plant was destroyed by fire.

Plaintiff and defendant then orally agreed to build a plant adequate to service the vicinity. This agreement followed the terms of the written one of September 22. Plaintiff agreed to furnish the machinery and install it, with the provision that when the plant was in operation, defendant would purchase it from plaintiff. The plaintiff complied with the terms of this agreement, furnishing and installing the necessary machinery and equipment, including poles and lines, and the new plant began operation in December, 1938. Defendant was unable to comply with his oral agreement to purchase, and the parties then agreed the property should be held by plaintiff as provided in the agreement of September

22, 1938, and that all gross income would be used to defray the expenses of operation and maintenance, and for payment of the machinery, equipment, and other installations supplied by plaintiff.

In October, 1939 an accounting was had of funds received and expended by plaintiff. A conditional sales contract was entered into, whereby plaintiff sold and defendant agreed to purchase all equipment for the sum of $17,782.45. Defendant was unable to take over the property, and plaintiff continued to operate the plant pursuant to the agreements mentioned. The business was so operated until 1943, at which time it became evident that the gross revenues were insufficient to pay the expense of operation, maintenance, and for plaintiff's equipment. Plaintiff at that time had expended beyond revenues approximately the sum of $20,000. The machinery and equipment were being depreciated by use, and there was no prospect that payment could be made therefor out of the proceeds of the business. Plaintiff then brought suit for a rescission of the contracts, on the ground there was a failure of consideration, offering to make an accounting, and asking that judgment be given in accordance with the facts as found by the court under the accounting. Account was made showing all receipts and expenditures, and showing a balance due to plaintiff for equipment furnished.

The evidence disclosed that the purpose of the written and oral contracts referred to was to allow plaintiff to sell, and defendant to purchase, necessary machinery and equipment for the maintenance and operation of the utility, and to provide for the payment of the property so sold by plaintiff from the proceeds of the business. Judgment was entered for plaintiff for all moneys expended by him in excess of the gross income from the plant. This included interest at 6% per annum, and the usual retailer's profits upon the sales of the equipment to the company. Practically all of the property purchased for the utility was from plaintiff, in his capacity as a retailer of such equipment. A lien was imposed upon the equipment for the balance due, and foreclosed. No personal judgment was given against defendant, and no deficiency judgment was allowed. The court directed the sale of the property of the utility, under the provisions of the law relating to sales of personal property. From this judgment the defendant appealed.

The following questions are raised by defendant: (1) No profit may be allowed on a sale of the trustee's individual property to the trust estate; (2) the defendant had six months to redeem from the sale for the reason that the property foreclosed was real estate; (3) No judgment in excess of $6,000 could be entered, the debt limitation fixed by the corporation commission; (4) No breach of contract on the part of defendant was disclosed, and no judgment rescinding the agreement could be entered until plaintiff had placed the

opposite party in status quo and restored the consideration or property received; (5) no interest could be allowed on the sales of the trustee's individual property to the estate.

██ In view of the facts to which we have heretofore alluded, it is evident that the transaction between plaintiff and defendant cannot be determined by the application of rules which appertain to trusts generally. Strictly speaking, the deal between plaintiff and defendant was merely a means whereby plaintiff, as a dealer, was endeavoring to make a sale of equipment to the defendant, who desired to purchase it. The trust feature, under which plaintiff took title to the utility and operated it, was for the purpose of collecting payment for the equipment furnished, or the advances made. Obviously, as a dealer he was entitled to be paid the usual profit charged on sales, and to the legal rate of interest for his advances. This would be presumed in the deal. The evidence clearly shows that this was the intention of the parties. The agreements were not entered into for eleemosynary purposes.

██ In October, 1939, an accounting was made by plaintiff covering operations to that date. The account included profits on the sales of the machinery, labor costs, interest, and carrying charges. The account was ratified and approved by the defendant, by signing an agreement of purchase for the machinery and equipment for the amount including all these items. The

agreement, whether it be considered one of trust or an agreement of sale and purchase, must be construed in accordance with the intention of the parties.

██ The intention of the parties seems to be clear, and, therefore, the court properly allowed judgment for dealer's profits on the equipment from plaintiff to the utility, and interest on his advances. There is nothing in the record to indicate any overcharges in this respect by plaintiff. Defendant had knowledge of the purchases, the charges therefor, and the fact that plaintiff was claiming a profit. He acquiesced in the transaction and allowed plaintiff to operate the property until 1943. If there were any question concerning the construction of the agreement and the intent of the parties, the defendant would be estopped from now claiming that plaintiff was not entitled to the usual dealer's profits on the sales of equipment, and for interest at the legal rate on his advances. Rothernberg v. Franklin Washington Trust Co., 127 N.J.Eq. 406, 13 A.2d 667; Pike v. Camden Trust Co., 128 N.J.Eq. 414, 16 A.2d 634; Farr v. Hartley, 95 Utah 358, 81 P.2d 640; City National Bank v. McGraw, 191 Ark. 927, 88 S.W.2d 846.

██ Defendant, in support of his claim that the power plant and other equipment was real estate, cites a number of cases to the effect that light and power property is held to be real estate. In all of these cases the machinery, equipment and power lines were either affixed to the real estate owned

by the power company, or appurtenant thereto. It also appears that in each of these cases, including Fechet v. Drake, 2 Ariz. 239, 12 P. 694, the intention was to affix the machinery and equipment permanently to the real property owned by the utility, or to an appurtenance thereto. There is no evidence in this case to indicate that the machinery and equipment; which the court ordered sold, was affixed to any real estate that belonged to the utility, or that the lines, poles and wires were an appurtenance to such real estate. The mere affixing of personal property to real estate may or may not cause it to lose its personal characteristics. It may retain its identity as a chattel personal and not become a chattel real. The rule is that for a chattel to become a fixture and be considered as real estate, three requisites must unite: There must be an annexation to the realty or something appurtenant thereto; the chattel must have adaptability or application as affixed to the use for which the real estate is appropriated; and there must be an intention of the party to make the chattel a permanent accession to the freehold. 36 C.J.S., Fixtures, § 1 p. 892. The testimony in this case is wholly barren of these requisites.

■ There is evidence that in 1939 a contract was executed between plaintiff and defendant which was in form a conditional sale agreement. All the evidence indicates that the parties treated the machinery, equipment and lines as personal property. The inference to be drawn from the testimony is that the property, even though affixed to the soil, was intended to remain as personal. Since this is substantially a case between seller and buyer, the intention of the parties is the real test. The conditional character of the sale may be utilized as an evidence of intention, and it may also be assumed, in the absence of testimony that the utility owned the land, that the property was affixed only to realty upon which it held an easement. Under such circumstances it may be presumed that the annexation to the land was only temporary, and was not made to become a part thereof. 36 C.J.S., Fixtures, § 14, subsec. c, p. 921; §§ 52 and 53, p. 997. We cannot say that the court erred in directing a sale without redemption. The usual practice is to decree the sale of a public service company's property as an entirety and without redemption so far as its real estate is concerned. Hammock v. Farmers Loan & T. Co., 105 U.S. 77, 26 L.Ed. 1111; Clearwater County State Bank v. Bagley-Ogema Tel. Co., 116 Minn. 4, 133 N.W. 91, 36 L.R.A.,N.S., 1132, Ann.Cas.1913A, 622.

■ It is our view that the judgment entered is not violative of the terms of section 69-237, A.C.A.1939, and the order of the commission limiting the amount to be borrowed for construction purposes to $6,000. The utility was transferred to plaintiff. No debt was actually incurred by it in procuring equipment. All of the charges were paid by plaintiff. The defendant, the original owner of the utility, transferred it to plaintiff on the condition

he would furnish certain items. When plaintiff was repaid, the utility and plant was to be retransferred to defendant. At the time plaintiff furnished the machinery and equipment the utility plant had been destroyed. A new plant was placed in operation under a plan whereby no debt was incurred by the utility as such, nor was defendant personally liable for the expenditures made by plaintiff. Since earnings were insufficient to pay for the material and equipment furnished, the transaction so far as the utility was concerned amounted to a loan of the use of the equipment for which it paid nothing and for which it incurred no liability.

The judgment entered by the court was not against the utility as such, but does foreclose defendant's rights. The judgment impressed a lien upon the property furnished by plaintiff and used by the utility. All this property and utility was directed to be sold as a going concern. This to satisfy plaintiff's unpaid lien on the property. The effect of this proceeding was to cancel the agreements between plaintiff and defendant, foreclosing the latter's right to the retransfer, and allowing the former recovery for his expenditures. The business and duties of the utility as a public service concern were not disturbed. The judgment merely terminated the transaction between the parties. Under these circumstances, the lien imposed by the judgment does not come within the terms of the act. The controversy involved private rights between the parties.

The judgment, since the property was sold as a going concern, could not result in the discontinuance of service or any detriment to the public.

Where a trust becomes impossible of accomplishment, it may be terminated. The rule as to this is stated in Restate. of the Law, Trusts, vol. 2, 1016, sec. 335a, as follows: "Impossibility. When the purpose for which a trust has been created can no longer be carried out, the court will direct or permit the termination of the trust, although the period fixed by the terms of the trust for its duration has not expired."

Thus, if the continuance of a trust becomes pecuniarily profitless or hopeless as to the achieving of its purpose, it may be terminated by an equity decree. Where its purpose becomes unattainable, the rule is established by the authorities that it may be terminated. 54 Am.Jur. 85, sec. 86, Trusts. In the law of contracts it seems to be the rule that where there is an entire, or even a substantial, failure of the consideration, the contract may be rescinded. 17 C.J.S., Contracts, § 420, p. 905; Black on Rescission and Cancellation, 2d Ed., vol. 1, p. 461, sec. 158. The contract may also be rescinded and terminated where the failure of consideration results from impossibility of performance or by impossibility of performance alone. Black, Id., page 466, sec. 160, page 583, sec. 208. The defendant, however, does not so much resist the rescission as the failure of the plaintiff

to place him in status quo. It is undoubtedly the rule that where rescission is sought, the party wishing to rescind "must place the opposite party in statu quo." 12 Am. Jur. 1031, sec. 451, Contracts.

It would appear from the testimony that at the time plaintiff furnished equipment and material and reconstructed the utility, the defendant had nothing of value with the exception of some wire and other items. In the accounting, credits were given by plaintiff for the value of these items, including all debits and credits between the parties. No evidence was offered as to the value of the certificate of convenience and necessity which presumably was transferred to plaintiff. In the absence of such testimony, we assume that it had no value aside from the plant. Nor is there any testimony that the good will of the business had any value. Doubtless all these matters were considered by the court upon entering judgment. If, in fact, any value could have been placed upon the certificate of convenience and necessity under which the business was being operated, or the good will of the business had any value, we must assume that it would have been ascertained by the court and deducted from the amount of the judgment.

We think the evidence was sufficient to justify the court in finding that there was a total failure of consideration which, under the law, would justify a rescission. The state of the record is such that we cannot say the court committed error in failing to require plaintiff to place the defendant in status quo.

No reversible error appearing, the judgment is affirmed.

STANFORD, C. J., and LaPRADE, J., concurring.